## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## LAFAYETTE DIVISION

JO ANN MARTIN                                          CIVIL ACTION NO. 11-CV-0052

VERSUS                                                 JUDGE HAIK

MICHAEL J. ASTRUE,                                     MAGISTRATE JUDGE HANNA
COMMISSIONER OF SOCIAL SECURITY


## REPORT AND RECOMMENDATION

Before the court is an appeal of the Commissioner's finding of non-disability.

Considering the administrative record, the briefs of the parties, and the applicable law, it is

recommended that the determination be REVERSED AND REMANDED.

**Background and Commissioner's Findings**:

Jo Ann Martin is 52 years old.  She has a high school education to eleventh grade,

without graduation or a GED.  She has relevant work history as a convenience store cashier,

cook and assistant manager, cook/cashier at a fast food restaurant, cook at a truck stop,

customer service manager at a grocery store, private duty home health sitter, and armed

security guard.[Tr. 103][1]  She has no problems reading and writing.  She has alleged that she

has been disabled since November 15, 2008, due to emphysema, COPD, and chronic

bronchitis. [Tr. 102] She has also referenced depression, treated with medication.  She filed

applications for disability, disability insurance benefits and supplemental security income

---

[1]On April 25, 2011, the Administrative Transcript was filed into the record. [Rec. Doc. 7]
Transcript pages are numbered at the bottom right corner of each page and will be referenced herein
accordingly as Tr. __.

benefits in June, 2009.  She has claimed to be totally and permanently disabled according to the guidelines of the Social Security Administration regulations.

The Commissioner initally denied Martin's claim on August 19, 2009. [Tr. 13] Subsequently, at a hearing on Martin's claims, testimony was taken from Martin and an impartial vocational expert, and a decision was issued by Administrative Law Judge Joan H. Deans on April 15, 2010, denying the claim. [Tr. 13-25] In her written decision, the ALJ identified the issue before her as whether the claimant is disabled under sections 216(I), 223(d) and 1614(a)(3)(A)of the Social Security Act.  An additional issue was identified to be whether the insured status requirements of sections 216(I) and 223 of the Social Security Act are met.  After considering all of the evidence, including the testimony of the claimant, the ALJ concluded that "the claimant has not been under a disability within the meaning of the Social Security Act from November 15, 2008, through the date of this decision." [Tr. 13]

Martin sought review of the decision in the Appeals Council, and, by Order of December 23, 2010, the Appeals Council refused review of the decision, making the ALJ decision the Commissioner's final administrative decision. [Tr. 1] On January 19, 2011, Jo Ann Martin filed the instant Complaint in this Court, seeking judicial review of the ALJ decision pursuant to 42 U.S.C. §405(g). [Rec. Doc. 1]

## ASSIGNMENT OF ERRORS

Martin asserts that the adverse decision of the ALJ merits reversal because the decisionmaker improperly rejected a critical limitation from a medical opinion to which she

otherwise gave great weight; she failed to properly consider the vocational effect of all pulmonary irritants; she made Step 5 findings that are contrary to the vocational expert's testimony; she failed to properly evaluate the credibility of the testimony of the claimant, and she made an unsupported exertional finding. [Rec. Doc. 9, p. 1]

## APPLICABLE LEGAL STANDARDS AND SCOPE OF REVIEW

Any individual, after any final decision of the Commissioner of Social Security in which she was a party may obtain a review of the decision by a civil action. 42 U.S.C. 405(g). This court's review of the Commissioner's decision that the claimant is not disabled is limited to determining whether that decision was supported by substantial evidence and whether the proper legal standards were applied in reaching that decision. *Alfred v. Barnhart*, 181 Fed. App'x 447, 449 (5th Cir. 2006); *Boyd v. Apfel,* 239 F.3d 698, 704 (5th Cir. 2001). The ALJ is entitled to make any finding that is supported by substantial evidence, regardless whether other conclusions are also permissible, and any findings of fact by the Commissioner that are supported by substantial evidence are conclusive and must be affirmed. *Perez v. Barnhart*, 415 F.3d 457, 461(5th Cir. 2005); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995).

'Substantial evidence' is such relevant evidence as a responsible mind might accept to support a conclusion; it is more than a mere scintilla and less than a preponderance. *Boyd v. Apfel,* 239 F.3d at 704; *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000). A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings

support the decision. *Boyd v. Apfel,* 239 F.3d at 704.  Finding substantial evidence does not involve a search of the record for isolated bits of evidence that support the Commissioner's decision; instead, the entire record must be scrutinized as a whole. *Singletary v. Bowen*, 798 F.2d at 823. In applying this standard, the court may not re-weigh the evidence in the record, try the issues *de novo*,  or substitute its judgment for that of the Commissioner, even if the evidence weighs against the Commissioner's decision. *Boyd v. Apfel,* 239 F.3d at 704; *Carey v. Apfel*, 230 F.3d at 135; *Newton v. Apfel*, 209 F.3d 448, 452(5th Cir. 2000).  The court does have authority, however, to set aside factual findings which are not supported by substantial evidence and to correct errors of law. *Dellolio v. Heckler*, 705 F.2d 123, 125(5th Cir. 1983). To determine whether the decision to deny social security benefits is supported by substantial evidence, the court weighs the following factors: (1) objective medical facts; (2) diagnoses and opinions from treating and examining physicians; (3) plaintiff's subjective evidence of pain and disability, and any corroboration by family and neighbors; and (4) plaintiff's age, educational background, and work history. 42 U.S.C.A. §405; *Martinez v. Chater*, 64 F.3d 172, 174(5th Cir. 1995).  Any conflicts in the evidence regarding the claimant's alleged disability are to be resolved by the administrative law judge, not the reviewing court. *Newton v. Apfel*, 209 F.3d 448, 452(5th Cir. 2000).  To make a finding that substantial evidence does not exist, a court must conclude there is a "conspicuous absence of credible choices" or "no contrary medical evidence." *Johnson v. Bowen*, 864 F.2d 340, 343-344(5th Cir. 1988); citing *Hames v. Heckler*, 707 F.2d 162, 164(5th Cir. 1983).

-4-

*Disability* is defined in the Social Security regulations as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. 423(d)(1)(A). *Substantial gainful activity* is defined as work activity involving significant physical or mental abilities for pay or profit. 20 C.F.R. §404.1572(a)-(b).

In determining whether a claimant is disabled, the Commissioner uses a five-step sequential analysis, which requires analysis of the following:  (1) whether the claimant is currently engaged in substantial gainful activity (i.e., whether the claimant is working); (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals the severity of an impairment listed in 20 C.F.R., Part 404, Subpart B, Appendix 1; (4) whether the impairment prevents the claimant from doing  past relevant work (i.e., whether the claimant can return to his old job); and (5) whether the impairment prevents the claimant from doing any other work. *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005); *Masterson v. Barnhart*, 309 F.3d 267, 271-72 (5th Cir. 2002); *Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000).  See, also, 20 C.F.R. § 404.1520.

If the Commissioner determines that the claimant is disabled at any step, the analysis ends.  20 C.F.R. § 404.1520(a)(4). If the Commissioner cannot make a determination at any step, she/he goes on to the next step.  20 C.F.R. § 404.1520(a)(4). When assessing a claim for disability benefits in the third step, the medical evidence of the claimant's

impairment is compared to a list of impairments presumed severe enough to preclude any gainful work. *Sullivan v. Zebley*, 493 U.S. 521, 525, 110 S.Ct. 885, 107 L.Ed.2d 967(1990). If the claimant is not actually working and his impairments match or are equivalent to one of the listed impairments, the Commissioner is required to "consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity." 42 U.S.C. §423(d)(2)(B).   The medical findings of the combined impairments are compared to the listed impairment most similar to the claimant's most severe impairment. *See Zebley*, 493 U.S. at 531, 110 S.Ct. 885.  It is the claimant's burden to prove at step three that his impairment or combination of impairments matches or is equivalent to a listed impairment. *Id.* at 530-31.  For a claimant to demonstrate that his disorder matches an Appendix 1 listing, it must meet all of the specified medical criteria.  An impairment that manifests only some of the specified criteria, no matter how severe, does not qualify. *Id.*   Ultimately, the question of equivalence is an issue  reserved for the Commissioner.  *Spellman v. Shalala*, 1 F.3d 357, 364(5th Cir. 1993).

Before going from step three to step four, the Commissioner assesses the claimant's residual functional capacity. 20 C.F.R. § 404.1520(a)(4). The assessment is a determination of the most the claimant can still do despite his physical and mental limitations and is based on all relevant evidence in the claimant's record. 20 CFR § 404.1545(a)(1). The claimant's residual functional capacity is used at the fourth step to determine if the claimant can still do his past relevant work, and at the fifth step, it is used to determine whether the claimant can

adjust to any other type of work. 20 CFR § 404.1520(e).  When a claimant's residual functional capacity is not sufficient to permit him to continue his former work, then his age, education, and work experience must be considered in evaluating whether he is capable of performing any other work.  *Boyd v. Apfel,* 239 F.3d 698, 705 (5th Cir. 2001); 20 C.F.R. § 404.1520.  The testimony of a vocational expert is valuable in this regard, as such expert "is familiar with the specific requirements of a particular occupation, including working conditions and the attributes and skills needed."  *Fields v. Bowen*, 805 F.2d 1168, 1170(5th Cir. 1986); *see also Vaughan v. Shalala*, 58 F.3d 129, 132(5th Cir. 1995).

The claimant bears the burden of proof on the first four steps, and then the burden shifts to the Commissioner on the fifth step to show that the claimant can perform  other substantial work in the national economy.   If the Commissioner  makes the necessary showing at step five, the burden shifts back to the claimant to rebut this finding. *Perez v. Barnhart*, 415 F.3d at 461; *Masterson v. Barnhart*, 309 F.3d at 272; *Newton v. Apfel*, 209 F.3d at 453.

Impairments that remain constant at all levels of exertion form an important  part of residual functional capacity.  These impairments are called non-exertional impairments, because the claimant suffers these impairments constantly, whether or not he exerts himself. Allergies are non-exertional impairments, and may be severe.  Intolerance to stress may also be a non-exertional impairment.  Side effects from medications have also been included in

consideration as non-exertional impairments.  Pain can be a non-exertional impairment when it exists whether or not the claimant is exerting himself in physical activities.

## ANALYSIS AND DISCUSSION

*The Administrative Record:*

The work history of Jo Ann Martin is set out in the administrative record, demonstrating a consistent employment history in the past in positions including cashier, cleaner, assistant retail manager, customer service manager, short order cook, security guard, and private duty sitter. [Tr. 36-45, 136-142]

Medical records submitted for consideration by the ALJ cover medical treatment and evaluation of Jo Ann Martin from January 7, 2008 through December 16, 2009.  Those records document eight visits with healthcare providers in 2008 and six visits in 2009.  Most treatment was provided at Moss Regional Medical Center, and records document one emergency room visit to Jennings American Legion Hospital for suspected salmonella poisoning.  Ms. Martin was not hospitalized at any time during the documented period. Records from visits in early 2008 note complaints of sinus problems, with coughing. Diagnostic impressions were noted as bronchitis, hypertension and nicotine addiction. [Tr. 172-174] As of May 2, 2008, records indicate that Ms. Martin was working five days a week, and she used a prescribed  nebulizer. [Tr. 173] She also took medication for depression and irritation. [Tr. 172]

On November 30, 2008, Martin was seen in the emergency room at American Legion Hospital in Jennings, Louisiana.  She reported that she started feeling bad at work after cleaning chicken.  She was concerned about salmonella poisoning, and she reported flu-like symptoms including wheezing.  She was released with prescribed medications and told to return if her condition worsened. [Tr. 179-184]  An Xray of the chest showed no evidence of active cardiopulmonary disease. [Tr. 187] Three days later, Martin visited the emergency room of Moss Regional Medical Center, complaining of fever and coughing and requesting blood pressure medicine.  She reported that she had not obtained the medications prescribed in her Jennings emergency room visit. Although congestion was noted, Martin's respiration was noted to be even and unlabored.  The diagnostic impression was sinusitis, bronchitis, hypertension, and tobacco abuse. [Tr. 188] On referral to the Moss Regional primary care clinic, Martin made her first visit on December 9, 2008, reporting shortness of breath.  A diagnostic impression was noted of COPD. [Tr. 192] Chest Xrays taken that day were negative. [Tr. 201] Pulmonary airway testing conducted at Moss Regional on March 26, 2009 indicated moderately severe airway obstruction and a diffusion defect suggesting emphysema. The diagnosis was moderately severe Obstructive Airways Disease. [Tr. 197-198] Results noted that a clinical trial of bronchodilators may be beneficial.  Additional pulmonary function studies, before and after bronchodilator use, were done August 6, 2009 by Dr. Kenneth Ritter, Jr., results of which indicated moderate respiratory impairment. [Tr. 218-222]  Since then, records indicate that Martin had two followup visits with her primary

-9-

care provider at Moss Regional, without change in her diagnosis or general treatment.  No physician has documented restrictions to Ms. Martin's work or other activities in any way except for the directive that she stop smoking; no physician has referenced in medical records the need for avoidance of fumes, odors, dust or any other irritant.

At the request of the Commissioner, a Residual Functional Capacity Assessment was performed by medical consultant Dr. Joseph Michalik. [Tr. 223-230]  These records were available to the ALJ at the time of the hearing on March 15, 2010.  Dr. Machalik noted that Martin's "allegations of physical impairment [are] consistent with the objective findings in the medical evidence...." [Tr. 228] He further noted that Martin should "avoid even moderate exposure" to fumes, odors, dusts, gases, poor ventilation, etc. [Tr. 227]

*The Administrative Hearing:*

The administrative hearing commenced before ALJ Joan Deans on March 15, 2010. The documentary record was described and made a part of the record by the ALJ without objection or addition by the claimant. [Tr. 32-33] Live testimony was given by Ms. Martin and the vocational expert witness William Stampley.  There was no objection to Mr. Stampley's credentials or expertise.

*Jo Ann Martin* recited her educational background, and she summarized her work history in response to the questions of the ALJ, confirming that she has not worked since January, 2009. [Tr. 36] She lives alone and is able to care for her daily needs, including personal care and housekeeping.  She described her ability to drive, holding a valid driver's

license, her ability to use her hands without difficulty, and her abilities to walk up to one half mile, stand up to two hours, lift/carry up to 15 pounds, and sit for 30 minutes at a time. [Tr. 35, 47-48] If she does more, according to Martin, she becomes weak and short-winded.  She is 5'1" and weighs 250 pounds. [Tr. 34] She cannot bend or squat. [Tr. 49]

Martin testified that beginning in 2008, she began to experience problems around dust and fumes, which made her sick. [Tr. 39]  Since January, 2009, she uses a nebulizer three times a day, in the mornings, at noon and at bedtime. [Tr. 46-47] When she becomes short-winded, she uses an inhaler. [Tr. 35] She testified that her doctors have told her to avoid dust, gas and other fumes, including perfume and cologne, and she testified she cannot be around cologne, chemicals and candles. [Tr. 45, 50-51] She quit smoking in August, 2009, after a long history of tobacco  use. [Tr. 49] She described sleep problems and depression which causes her to cry daily.  She has sought no mental health treatment. [Tr. 50]

*William Stampley* testified as a vocational expert, without objection.  He reviewed exhibits and records supplied to him, considered Ms. Martin's work background, and listened to her testimony at the hearing. [Tr. 52] He described Martin's relevant past work to include positions as a commercial cleaner, cashier/checker, fast food cook, customer service clerk, home care attendant, security guard, supervisor/cashier and stock clerk, which positions ranged from medium to light duty skilled and semi-skilled levels. [Tr. 53]

In responding to questions by the ALJ regarding Martin's condition and abilities/limitations, Stampley  was asked to assume that Martin could occasionally lift/carry

up to 20 lbs, could frequently lift/carry up to 10 lbs, could stand/walk 6 hours per day with appropriate breaks, could sit up to 6 hours per day, but could not climb or use ladders and must avoid even moderate exposure to fumes, odors, dust, gases or poor ventilation. [Tr. 54] On those assumptions, the expert opined that Martin could still work as a customer service clerk or supervisor cashier. [Tr. 54] On expansion of the hypothetical, he testified that she could still do those jobs, even if she were required to take a 15 minute breathing treatment during her regular lunch break. [Tr. 54] If the breathing treatment could not be accommodated on a lunch break, then Stampley opined that Martin could not likely work as a customer service clerk, since she would need to be predictably available at all times. [Tr. 54-55] If Martin must be able to take unscheduled breaks for breathing treatments, then most employers would not tolerate that restriction, per the expert. [Tr. 56] When the hypothetical question was expanded to include consideration of Martin's alleged 'sick day' history per her testimony–about eight off-work periods during a year–then Stampley opined that there is no work that Martin could do. When asked if Martin could still do the work described within the original hypothetical limitations if 'odors' were interpreted to include colognes and perfumes, the expert opined that the interpretation would not necessarily rule out work which did not include public contact.[Tr. 57] Martin could still be an assembler(light-unskilled work), taxi starter(sedentary-unskilled work), or addresser(sedentary-unskilled work), jobs which fit Martin's restrictions and which are available in the national and state economy. [Tr. 57-58]   On cross-examination, when asked to assume that "there was no exposure to

-12-

colognes or perfumes," Stampley acknowledged that even those positions may expose Martin to some degree of dust, colognes and other irritants, depending upon the setting. [Tr. 59]

At the close of the hearing, the claimant was offered a final opportunity to add testimony or respond to things discussed during the hearing.  She had nothing to add.

*The ALJ Decision:*

The record  demonstrates that the ALJ followed the requisite five step sequence in analyzing the claims of Martin.  At step one, she determined that the claimant has not engaged in substantial gainful activity since November 15, 2008. [Tr. 15]  At step two, she determined that the claimant has the severe impairments of chronic obstructive pulmonary disease, hypertension, and obesity. [Tr. 15] She concluded that the claimant has no severe mental impairment, and no more than mild functional limitation due to depression, with no more than mild limitation in activities of daily living, social function, concentration, persistence and pace. [Tr.16]       At step three, she found that Martin does not have an impairment or combination of impairments that meets or medically equals a listed impairment in 20 C.F.R., Part 404, Subpart B, Appendix 1, noting that obesity is not a listed impairment. [Tr. 16]   That finding included consideration of the effect of Martin's obesity on each body system, as appropriate under Social Security Ruling 01-01p. [Tr. 16, 18]

Before proceeding to step four, the ALJ arrived at the residual functional capacity for the claimant, including lifting, bending, standing/walking and other restrictions associated

with the claimant's impairment, and she found that Jo Ann Martin has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that the claimant can perform occasional postural functions, never climb ladders, ropes, or scaffolds, can have only moderate exposure to pulmonary irritants, and should be able to administer herself a breathing treatment during her lunch hour, if necessary. [Tr. 17]  In making that finding, the ALJ applied the requisite two-step process to find that (1) while there is an underlying medically determinable physical impairment which could reasonably be expected to produce the claimant's symptoms, (2) the claimant's statements concerning the intensity, persistence and limiting effects of those symptoms are not credible to the extent they are inconsistent with the RFC assessment. [Tr. 17] The ALJ cited to Martin's reduced, but normal FEV1/FVC studies from March 2009, pulmonary function studies from August, 2009, which indicated moderate respiratory impairment, and Martin's most recent medical progress notes which reported clear lungs and cessation of smoking. [Tr. 17] The ALJ also noted Martin's controlled hypertension and her record of obesity(not referenced by the claimant as a reason for her inability to continue employment). [Tr. 18]  She also considered and concurred with the expert opinion evidence from Dr. Joseph Michalik, the medical consultant for the state agency who reviewed Martin's medical records and completed a Physical Residual Functional Assessment. [Tr. 18] After considering all the evidence, the ALJ concluded that Martin "retains the ability to perform light work with some postural

limitation and moderate exposure to pulmonary irritants, as defined by Dr. Michalik." [Tr. 18]

At step four, relying on the testimony of the vocational expert, the ALJ  further concluded that Martin is capable of performing past relevant work as a customer service clerk and cashier, which work does not require performance of work-related activities precluded by the RFC. [Tr. 18-19]

Finally, although the ALJ determined that Martin is capable of performing past relevant work, ordinarily allowing for denial of her claim at step four, she nevertheless made alternative findings at step five that, considering the claimant's age, education, work experience, and residual functional capacity,  there are other jobs existing in significant numbers in the national economy that Martin is also able to perform. [Tr. 19]

As set out above, this Court's standard of review is (1) whether substantial evidence of record supports the ALJ's determination, and (2) whether the decision comports with relevant legal standards.  *Villa v. Sullivan*, 895 F.2d 1019, 1021(5th Cir. 1990).  It is well-settled that the Commissioner's decision is not supported by substantial evidence when the decision is reached by applying improper legal standards.  *Singletary v. Bowen*, 798 F.2d 818(5th Cir. 1986).

*Issues related to the  Physical Residual Functional Capacity Assessment:*

In the instant case, the claimant asserts that the Administrative Law Judge improperly rejected a critical limitation from a medical opinion to which she otherwise gave great

-15-

weight. [Rec. Doc. 9, p. 4] The opinion is that of Dr.Joseph Michalik, the medical consultant who performed the Physical Residual Functional Capacity Assessment. Dr. Michalik opined that Ms. Martin should ***"avoid even moderate exposure"*** to fumes, odors, dusts, gases, poor ventilation, etc.   [Tr. 223-230] The ALJ found that Martin ***"can have only moderate exposure"*** to such irritants. [Tr. 17]  Significantly the Michalik opinion does not declare that Martin should "avoid all exposure" to such irritants, an option available to him on the PRFCA form. [Tr. 227] The term selected by Michalik suggests the determination that some degree of exposure is acceptable.  So, the actual medical opinion limitation appears to fall somewhere between 'no exposure' and 'moderate  exposure.' The terms 'perfume' and 'cologne' are not referenced at all by the medical consultant, and there is no indication in the record whether the consultant has defined 'odor' as offered by Martin.  The limitation is, however, clearly misstated by the ALJ in the decision.

Acknowleging the error, the Commissioner asserts that the error is not significant, since the ALJ's hypothetical questions to the vocational expert at the hearing properly adopted and accurately quoted Dr. Michalik's environmental limitation; it was not disregarded as suggested by the claimant. The hearing transcript confirms that the VE was asked to assume a person who needed to "avoid even moderate exposure to fumes, odors, dust, gases, and poor ventilation." [Tr. 54] In response, the VE testified that Martin's past jobs as a cashier supervisor and a customer service clerk would not expose a worker to "even

moderate exposure." [Tr. 54] Thus, says the Commissioner, since the ALJ relied upon the expert's testimony in phrasing that correct hypothetical question, remand is not required.

The Fifth Circuit has held that an ALJ need only incorporate into the hypothetical questions posed to a vocational expert those claimed disabilities that are supported by the evidence and recognized by the ALJ. *Masterson v. Barnhart*, 309 F.3d 267, 273(5th Cir. 2002); *Bowling v. Shalala*, 36 F.3d 431, 436(5th Cir. 1994). A hypothetical question is not defective if it reasonably incorporates all disabilities recognized by the ALJ, and the claimant or his representative is afforded the opportunity to correct deficiencies in the ALJ's question by mentioning or suggesting to the VE any purported defects. *Boyd v. Apfel*, 239 F.3d 698, 706-707(5th Cir. 2001). And, an ALJ is not bound by vocational expert testimony which is based upon hypothetical assumptions that are rejected by the ALJ. See *Owens v. Heckler*, 770 F.2d 1276, 1282 (5th Cir. 1985). The record demonstrates that the ALJ solicited detailed testimony from the vocational expert William Stampley relative to available jobs in the national and state economy which are within the claimant's restrictive range of work, including the posing of hypothetical questions based upon the assessment of the medical consultant. Nevertheless,  the ALJ clearly made a different finding in her decision, which is different from the limitation described by the medical consultant.  That difference is either the result of a simple misstatement-a harmless error, or a rejection of the Michalik opinion altogether, a reversible error.

-17-

An ALJ cannot reject a medical opinion without an explanation. *Loza v. Apfel*, 219 F.3d 378, 395 (5th Cir.2000), citing *Strickland v. Harris*, 615 F.2d 1103, 1110 (5th Cir.1980); *Goodley v. Harris*, 608 F.2d 234, 236 (5th Cir.1979). A credibility choice that is based on an erroneous interpretation of medical records cannot stand. *See Olson v. Schweiker*, 663 F.2d 593, 596 (5th Cir.1981). Moreover, "[t]he ALJ must consider all the record evidence and cannot "pick and choose" only the evidence that supports his position. *Loza v. Apfel*, 219 F.3d 378, 393(5th Cir. 2000).

*Credibility Issues:*

Martin asserts that the ALJ failed to make a valid and supported credibility finding as to Martin's testimony regarding her symptoms, including the frequency and duration of her nebulizer treatments, failing to provide a rationale for discrediting Martin's testimony. [Rec. Doc. 9, p. 9] The decision confirms that the ALJ did make a credibility determination regarding Martin's description of her symptoms, finding her descriptions of intensity, persistence and limiting effects of her symptoms are not credible to the extent they are not consistent with the RFC assessment. [Tr. 17]  The ALJ specifically considered the reported symptoms as compared/contrasted with medical records. [Tr. 18]  Martin's testimony was that she used her nebulizer three times a day(morning, noon and night), and that it takes her 15 minutes for each treatment. [Tr. 46-47] On that testimony the ALJ reasonably factored one nebulizer treatment during a work day in considering Martin's workplace needs.

The evaluation of a claimant's subjective symptoms is a task particularly within the province of the ALJ who has had an opportunity to observe whether the person seems to be disabled.  *Elzy v. Railroad Retirement Bd.*, 782 F.2d 1223, 1225(5th Cir. 1986); *Loya v. Heckler*, 707 F.2d 211, 215(5th Cir. 1983).  The ALJ's decision on the severity of pain and other subjective symptoms is entitled to considerable judicial deference.  *James v. Bowen*, 793 F.2d 702, 706(5th Cir. 1986).  Hence, the law requires the ALJ to make affirmative findings regarding a claimant's subjective complaints and articulate his reasons for rejecting any subjective complaints.  *Falco v. Shalala*, 27 F.3d 162, 163-64(5th Cir. 1994).  The undersigned finds the credibility assessment by the ALJ is based on substantial evidence in the record, including the testimony of the claimant.

As to Martin's assertion that the ALJ's finding that the claimant's ability to stand/walk for six out of eight hours is contrary to the evidence, the undersigned notes that while the finding is broader than Martin's self-described abilities, it is consistent with the "reasoned judgment' of the medical consultant Dr. Michalik, who recorded an exertional limitation for standing/walking "about 6 hours in an 8-hour workday." [Tr. 224]

*The alternative step five finding:*

Martin cites to the ALJ description of the five step evaluation process in her decision to indicate that "[i]f it is determined that the claimant is or is not disabled at a step of the evaluation process, the evaluation will not go on to the next step." [Tr. 14] In the instant case, the ALJ found that Martin's ability to perform all or substantially all of the requirements of

-19-

light work "has been impeded by additional limitations." [Tr. 19] The evaluation process did not end at step four, and the ALJ made an alternative step five finding, based on the conclusion that there are other jobs existing in the national economy that she is also able to perform.  The finding considered the education and communication abilities of the claimant and the fact that Martin changed age category, from a 'younger individual' to "closely approaching advanced age," and the ALJ found that use of the Medical-Vocational Rules as a framework supports a finding that Martin is "not disabled" whether or not she has transferable job skills. See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2. Alternatively, the ALJ found that considering those factors with work experience and residual functional capacity, "there are other jobs that exist in significant numbers in the national economy that the claimant also can perform(20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a))." [Tr. 19] In making the alternative finding, the ALJ relied on testimony from the vocational expert regarding Martin's added restriction of having to avoid working around perfumes and colognes.  With those restrictions, three positions were identified, including small products assembler, taxi cab starter, and addressor. Based on that testimony, the ALJ concluded that Martin is capable of making a successful adjustment to other work that exists in significant numbers in the national economy.  It is in the alternative step five that the ALJ made the "not disabled" finding.

**CONCLUSION AND RECOMMENDATION**

-20-

Fifth Circuit case law establishes that [procedural perfection in administrative proceedings is not required, and the Court will not vacate a judgment unless the substantial rights of a party have been affected. *Mays v. Bowen*, 837 F.2d 1362, 1364(5th Cir. 1988). For the reasons given above, the undersigned finds that while none of the statements of error presented by the claimant would necessarily warrant reversal of the ALJ decision in this case, there is presented herein an obvious and acknowledged misstatement or outright rejection by the ALJ of a limitation set out in the Physical Residual Functional Assessment, which influenced the ALJ's fuctional capacity assessment, which influenced the step four and step five determinations of the hearing officer.  A misstatement, standing alone, may constitute only harmless error, but it cannot be overlooked that the limitation made subject of the misstatement in this case is critically linked to the other determinations made by the ALJ. For that reason it must be clarified so as not to taint the inferences, witness inquiries and findings stemming from it.  In that context it cannot be considered harmless error.

Applying the appropriate review standard to the record of the instant case,

**IT IS THE RECOMMENDATION** of the undersigned that the decision of the Commissioner be **REVERSED AND REMANDED** for consideration of all of claimant's medically determinable impairments throughout the sequential evaluation and further administrative proceedings.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from receipt of this report and

-21-

recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within fourteen days after receipt of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of receipt, or within the time frame authorized by Fed. R. Civ. P. 6(b) shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plan error.  See *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

Signed in Lafayette, Louisiana, this 12th day of March, 2012

Patrick J. Hanna
United States Magistrate Judge
800 Lafayette St., Suite 3500
Lafayette, Louisiana 70501
(337) 593-5140 (phone) 593-5155 (fax)